Good morning. May it please the Court, I am Valerie Ann Zukin, appearing on behalf of Petitioner, along with Mark Vanderhout and Megan Salomi. Petitioner is present in court today with his daughter Christy Absalom. Petitioner, I'm here to speak today about the Board's three chief errors in its dismissal of Petitioner's appeal. Initially, in Petitioner's case, the government did not make the requisite showing that there was a fundamental change in circumstances that can overcome the presumption that Petitioner is entitled to because he has suffered past persecution, and the Board erred in holding otherwise. Second, the Board abused its discretion in holding that asylum is not warranted as a matter of discretion in Petitioner's case. And third, the Board erred in failing to analyze whether humanitarian asylum is warranted in Petitioner's case, especially given that, in this case, the agency by which point apartheid under the law had ended. Roberts. Can I ask you about your second point? E. Lynch. Yes. Roberts. Can we review the discretionary denial? E. Lynch. Can this Court review? Roberts. Yes. E. Lynch. Yes. This Court can review the discretionary denial. Congress preserved the Court's jurisdiction to review a discretionary denial of asylum in its enactment of IHRA, as this Court held in Morales, and the reviews for abuse of discretion. Roberts. Right. We can only review for abuse of discretion. E. Lynch. That's correct. Roberts. So tell me why, under these circumstances, we have a country we put aside we have a country where conditions have surely changed, and we have a removable alien. Why does the Board abuse its discretion under these circumstances to say we would not grant relief? E. Lynch. Yes. The Board clearly abuses its discretion regarding its analysis that Petitioner does not merit asylum as a matter of discretion, because in the Board's analysis it merely considers the negative factors present in Petitioner's case, and it is required to consider all of the factors, negative and positive, and the past persecution that Petitioner suffered, as this Court held in Kaloubi and Zhang. And here the Board plainly did not consider all of those factors. Roberts. So if we go back to the first question you pose, what — how would country conditions have to have changed in South Africa, in your view, in order to change — to be sufficient — a sufficient change? In other words, there's been a pretty dramatic change in country conditions in South Africa. What more would — what more would have to be shown, in your view, to meet the changed country conditions requirement? E. Lynch. Yes, Your Honor. To meet — for the government to overcome the legal presumption that Petitioner is entitled to because he suffered past persecution, the government is required to demonstrate by a preponderance of the evidence  Roberts. Yes, another standard, another legal standard. E. Lynch. Okay. Roberts. I'm just — here's what we have in this case. We have somebody who was, I think, undoubtedly persecuted because of the apartheid regime in South Africa. And we now have a country that's not only — doesn't have an apartheid regime, but has, by its laws, changed its laws to make — make the kind of treatment that your client — that your client got illegal. So I'm asking, what more would the government need to show? I know what the legal standards are. Just tell me what more, in your view — could the government ever establish sufficient changed country conditions here? And if so, how would it do so? E. Lynch. In this case, the government did not establish changed country conditions because it submitted a country report that, at best, is inconclusive and does show that Petitioner still risks future harm under Kamalian that is not an inclusive country report. Moreover, the board here ignored portions of the report, portions that do show Petitioner faces a risk of future harm. That was legal error of the board to ignore evidence of record. The board is not permitted to only rely on specific parts of the report, as this Court held in Vint Thanh Nguyen and Mutuku. Notably, in this case, the board was discussing at AR-4 that the Constitution and laws prohibiting discrimination are in place, but if upon examination of the country report, the very next sentence states, however, entrenched attitudes and practices, as well as limited resources, restricted the practical effect of these legal protections. So the board was not considering the entire country report, which it was required to do. The board was required to conduct an individualized analysis tailored to the Petitioner's specific harms and circumstances. So not only was the report insufficient, but the board failed to conduct the requisite analysis. Therefore, the burden has not been overcome. What relief are you seeking? We are seeking asylum and withholding of removal. No, I understand. But we can't, we don't grant asylum or withholding. Correct. So what do you want us to do? Do you want us to go back and tell the board to do it right? I'd like, Petitioner would like you to remand the case with instruction to grant asylum and withholding. Well, I think your argument is that they didn't sufficiently consider all the circumstances and they also didn't balance his circumstances against the country report correctly. Is there only one conclusion that can be reached in this case? Or if you're right, don't we just have to send it back to them to reprocess the case? Initially, because the evidence submitted by the government is not sufficient to overcome the presumption, on this record, the Court should find the government has not rebutted the presumption and thus asylum and withholding are warranted and should remand with instruction to grant. Okay. I understand your position. And in addition, in Petitioner's case, the board erred in failing to analyze whether humanitarian asylum is warranted, which is especially important in Petitioner's case because here the agency delayed 15 years to find that Petitioner suffered past persecution. And by that time, when the agency finally did make that determination, apartheid under the law had ended. Matter of Chen is the seminal Board of Immigration Appeals case that gave rise to humanitarian asylum. And in Matter of Chen, the Board of Immigration Appeals explains that a person who or whose family has suffered under atrocious forms of persecution should not be expected to repatriate. Even a change in regime may not produce a change in the attitude of the population, nor in view of past persecution in the mind of the refugee. In this case, not unlike in Matter of Chen where the asylum applicant had been raised during the Cultural Revolution in China and experienced persecution in one of its severest forms, Petitioner grew up in apartheid South Africa. His family faced discrimination and segregation, had its land illegally seized. As a child, his school was set on fire. Petitioner himself as an adult was arrested and targeted by the police due to his race. The police beat him and humiliated him and used racial slurs against him. After leaving South Africa, he toured North America as a minister and Christian musician, publicly criticizing the government. In Petitioner's case, the Board plainly failed to consider all of the factors in its conclusory dismissal of humanitarian asylum. And under this Court's case law, namely Kalubi, the Court, the Board was required to consider all of the factors and to recognize the special factors present in asylum cases. Here the Board merely considered the one time Petitioner was arrested in a vacuum, ignoring the rest of the details that he had suffered, he and his family had suffered a lifetime of persecution. As Petitioner stated before the Immigration Court, growing up colored in South I'd like to reserve my remaining time for rebuttal. Thank you, Counsel. Good morning, Your Honor. May it please the Court, Dan Goldman on behalf of the Attorney General, Loretta Lynch. The government asks this Court to uphold the agency decision and deny the petition for review. At bottom, Mr. Absalom's claim fails for lack of evidence. In the end, he's a... Can I ask you to address the extraordinary delay in this case? Yes, Your Honor. And let me tell you why it troubles me. I don't know why the application languished from 1989 to 2003, and the record doesn't indicate that, does it? It does not, Your Honor. Had this case been gone before an IJ in 1989, do you agree with me that it's likely that Mr. Absalom would have been granted asylum? The only reason I'm hesitating to simply say yes... Because your brief does suggest that he's established past persecution, and so there would have been a presumption to rebut, and maybe you know of something that you didn't say now, but I can't think of anything. I understand, Your Honor. I'm not asking you to concede it, but it does appear likely. And then we get to 2000. For some reason, that's unexplained in the record. Maybe it's Mr. Absalom's fault. Maybe it's the agency's fault. I just can't tell. The case reactivates itself when he gets to an interview in 2003, and by the time it gets to the board, country conditions have changed. Whether they've changed sufficiently or not is what we're fighting about. What's the consequence of that delay? I'm not sure I know, but I'm troubled by it. I understand Your Honor's concern. There's a couple points factually, though, that I think play very heavily in this case, and Petitioner argued, and I hope I heard it right, that the agency delayed in analyzing the claim of past persecution. That's somewhat misleading, because the claim that Mr. Absalom made when he applied for asylum in 1988 was not a past persecution claim. He claimed in 1988 that he feared reprisals, retributions for things that he had said when he was touring this country. When he was interviewed by the media, he criticized the apartheid regime. The claim that he articulated in 1988 was a claim of a fear of future persecution. That's not my summary. That's not the agency's summary. And I would urge this Court to look at page 295 of the record, his representative at the time from Catholic Charities, in submitting paperwork to the Court, says, we've got a claim here for well-founded fear, not past persecution. So the delay in this case did not prevent the specific claim of past persecution that he makes later. He certainly makes that claim later. It did not prevent it from being raised. Fair enough. But still, address what we're supposed to do with this delay. I don't know who caused it. There's a few points to make, I think, with regard to the delay. Certainly, that type of delay should not happen. And I'm not going to stand here and say that that type of delay was okay. But there are a few points. Number one, he has never formally articulated an argument based on that delay to the Immigration Court or in the briefs to this Court. Except with respect, I suppose, to the discretionary denial. And the notion is, you fail to consider, it doesn't quite say it this way, that I've been in this country for 30 years and have a family here. I think, Your Honor, what that ultimately gets to is the problem with the legal problem with his claim for relief is that the evidence doesn't support it. And if you look at what he's actually saying when he testifies in the Immigration Court, what he says is, I want to stay here because my family and I have established a life here. That's understandable, but it's not a basis for relief under the law. The second problem with attempting to use the delay at this point as some form of relief is that any type of estoppel type or due process type of claim would require clean hands on his part. And he simply cannot make that showing based on his conduct, based on his conviction for sexual battery against his daughter. Again, with regard to the claim that was originally made, it was a claim for well-founded fear. That's his own representative's words as the paperwork is being submitted. The claim changes, understandably so. But it changes, and the past persecution that Your Honor notes is articulated much more fully and, importantly, much more specifically as to him when he comes back in 2007, 2008. And EIJ finds that he has established it. Absolutely, Your Honor. But the claim that he makes in 2007, 2008 is based both on the general conditions, the pattern and practice under the apartheid regime, but it's also very specific as to him. And he says things in his application — I'm sorry, he says things when he testifies in immigration court that he has never said before. Okay. But let's — then let's fast forward to the 2000s. And — And at that point, the EIJ says, yes, you have established a past persecution. The government has the burden to rebut the presumption of future persecution. And the rebuttal is entirely a country conditions report, or almost entirely. Why is that sufficient to rebut the presumption? It is sufficient, Your Honor, because the requirement is for an individualized analysis. It doesn't — the requirement is not for individualized information. There's no requirement for the — for Mr. Absalom's application to go to the State Department and they run background checks on him and they say, this individual, any problems he had before, they've been rebutted. The more individualized the claim is, the more individualized the rebuttal would necessarily have to be. In this case, the claim of past persecution was based on the general conditions under apartheid and also specifically his claim that he was — that he personally suffered, that he was arrested, that he faced discrimination. That pattern of practice changes. And as Your Honor noted, this is not simply — it's a sea change. This is not simply a change in government where one party is in, one party is out, rebels are in, rebels are out. This is a complete change in the system. There are new laws. There's a new Constitution. And specifically, the agency analyzes the claim that he's made with regard to himself. It would not have been sufficient if the government had simply said, come on, this is South Africa. We all know what happened. We all saw the movies. We all saw CNN. No longer has a claim. They did not do that. What they said was, let's look at his specific claim. He fears problems based on his colored status. But there's no indication in the record of persecution of individuals of his status. And that's exactly the individualized analysis, exactly the type of thing that this Court has said is important and is not simply important but is required to be done. So to suggest that there's no analysis and no attention paid to the specific nature of his claim, I think ignores the specific language of both the immigration judges and the Board's decision. Under the discretionary denial issue, did the Board consider all the facts? Yes. How can we tell? Because they specifically reference the discretionary evaluation and they specifically agree with the immigration judge's conclusions and they specifically cite to the immigration judge's discussion at pages, I believe, 10 and 11 of the immigration judge's decision. This Court has not required that the Board simply repeat verbatim what an immigration judge has said. Here the immigration judge goes through all of the factors, positive and negative, lays them out, but concludes that Mr. Absalom's conviction, his conduct, his lack of forthrightness in immigration court in discussing the sexual battery on his daughter, those things outweigh any positive equities. The Board looks at those same factors, reviews the case. There's no indication that they did not consider those things. They specifically talk about, they specifically cite to, rather, the immigration judge's decision and the specific parts of the immigration judge's decision that discuss the discretionary denial of relief. And those factors, Your Honor, I would urge this Court to look as well at some of specifically what Mr. Absalom said in court. There's been a lot said in the briefs on both sides, that he expressed remorse, that he apologized for what he did. But I would urge this Court to look specifically at pages 107, 115, 119. And what he says in immigration court, he may say he's sorry, but he also comes out and says, you know what? The reason I did this, I was worried about my daughter going out and having sex as a teenager. I was right. Because look what happened. Now she's 33, living at home, living in my home, and I'm taking care of her and her four kids. So to the extent that he expresses any remorse, I would respectfully suggest that that's at least tempered, if not seriously undercut, by what comes very close to a statement of vindication on his part. Essentially, he's saying, I may be sorry, I may have been wrong to do what I did, but I was right. I would also urge this Court to look at what could have been said. What could have been said in immigration court? The discussion in immigration court went on for, I believe, more than 20 pages, teasing out one fact at a time. Did you touch her? What does it mean to touch her? Were you convicted? Where? Anywhere in the world? Big world. No, let's talk specifically about whether you were convicted outside of South Africa. That's clarified on the record twice. He says no. Then he later admits it. What he could have said in court? Very simple. I was wrong, I was convicted, I was trying to protect my daughter, but how I went about it was wrong. And that would have ended the discussion. But that's not what happened. I see that my time has expired. I would be subject to the Court's questions. Thank you, Counsel. Thank you, Your Honor. May it please the Court. In response to respondents' arguments, initially I'd like to explain that in the asylum denial that was issued by the INS in 1989, it stated that Petitioner would be able to renew his application in court. However, it did not give Petitioner that opportunity until 14 years later. Well, he didn't do anything to try to renew the application in the intervening 14 years, did he? That's not something that a Petitioner is able to do. Well, I'm just — my question was, is there anything in the record that he did during those intervening 14 years to renew the application? There's nothing so indicating in the record, Your Honor. It should have been done procedurally, in your view, at that point. He received the second letter denying his asylum application but saying it could be renewed and heard by an IJ. What procedural steps should the agency have taken at that point? The agency should have issued an order to show cause, placing him into immigration court proceedings where he could have more thoroughly presented his claim. And I do want to point out that — So they didn't take steps to deport him, in effect. Is that right? The OSC at that time was equivalent to a notice to appear, which would then result in a final order of removal. So the government didn't take the steps necessary to remove him. Is that correct? The order to show cause would put him into immigration court proceedings, at which point he could renew his application for asylum and any other forms of relief for which he might have been eligible. And if denied, then he would have been deported. Correct. Couldn't he have renewed it on his own? I'm sorry? Without being put into the immigration court proceedings. What happens is it appears to me the INS dropped the ball. They didn't deport him, so they didn't put him into proceedings. But couldn't he have filed an application for asylum during that time period? He had already filed an application. I know. And it had been denied at the administrative level. Could he have filed a new one? I mean, I'm not sure I can lay the delay at the government's feet here. That's what I'm trying to figure out. I don't have an explanation for the delay. But procedurally, it is the government's job to put someone into proceedings so they can renew the application. And that is what here the government said it would do, and it's denial. And I just would like to ---- It's kind of strange to complain about the government not removing, not moving to remove your client. That's really what you're saying is that they should have tried to remove him earlier. The mechanism by which an asylum applicant can have their application renewed before the immigration judge is indeed in immigration court. And in immigration court, Petitioner made a much clearer showing of his claim. But I would like to briefly explain that Petitioner did make claims of past persecution in his initial claim. At AR 271 in Petitioner's 1988 declaration, he did raise past persecution. He said he began to have trouble with the police and the police would beat us. So this was present in his initial claim. There was evidence of past persecution. Any further questions? Thank you, Counsel. Thank you. Case disserted will be submitted for decision.
judges: Thomas, Ikuta, Hurwitz